Filed 2/3/25  P. v. Stinson CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C100556 |
| Plaintiff and Respondent, | (Super. Ct. No. 13F04902) |
| v. | |
| DAVONTE STINSON, | |
| Defendant and Appellant. | |

In 2014, a jury found defendant Davonte Stinson guilty of kidnapping to commit robbery, first and second degree robbery, and being a felon in possession of a firearm.  The jury also found true allegations that defendant was armed with a firearm and used a firearm during the commission of a crime.  The trial court sentenced defendant to a determinate term of 17 years 8 months in state prison, followed by a consecutive, indeterminate term of seven years to life.

Following a series of appeals and remands, including a transfer from the Supreme Court, defendant returned to the trial court for resentencing in 2023.  (*People v. Stinson* (Nov. 23, 2022, C093993) [nonpub. opn.] (*Stinson II*).)  On February 23, 2024, the trial court resentenced defendant to an indeterminate term of seven years to life and reduced the

1

determinate term to 15 years 8 months. The court refused defendant's request to dismiss the enhancements.

On appeal, defendant argues the trial court abused its discretion in refusing to dismiss "any or all [of] the enhancements." Defendant also contends the amended abstract of judgment should again be amended to reflect the correct number of custody credits. The People contend the trial court acted within its discretion at resentencing but concede that recalculation of defendant's custody credits is required. We will remand for recalculation of defendant's custody credits but otherwise affirm the judgment.

PROCEDURAL BACKGROUND

A. *Historical Background*

In 2014, a jury found defendant guilty of kidnapping to commit robbery (Pen. Code,[1] § 209, subd. (b)(1) – count one), two counts of robbery (§ 211 – counts two & four), and two counts of unlawfully possessing a firearm (§ 29800, subd. (a)(1) – counts three & five). The jury also found true allegations that defendant committed kidnapping and robbery (counts one & two) while armed with a firearm (§ 12022, subd. (a)(1) [arming enhancement]), and personally used a firearm (§ 12022.53, subd. (b) [firearm use enhancement]) while committing robbery (count four).

The trial court sentenced defendant to an indeterminate term of seven years to life on count one. The court also sentenced defendant to an aggregate determinate term of 17 years 8 months: one year for the arming enhancement (appended to the indeterminate term), the upper term of six years on count four, plus 10 years for the firearm use enhancement and one-third the middle term of eight months on count five. Pursuant to section 654, the court imposed but stayed the upper term of five years on count two, the upper term of three years on count three, and the single year imposed for the arming enhancement on count two. Defendant appealed. (*People v. Stinson* (2019) 31 Cal.App.5th 464 (*Stinson I*).)

---

[1] Further undesignated statutory references are to the Penal Code.

Another panel of this court affirmed the judgment but remanded the matter for a hearing under *People v. Franklin* (2016) 63 Cal.4th 261, and to allow the trial court to exercise its discretion under section 12022.53, subdivision (h), and decide whether to strike the firearm use enhancement.  (*Stinson I*, *supra*, 31 Cal.App.5th at p. 478.)

On remand, the trial court denied defendant's request to strike the enhancement. Defendant appealed and another panel of this court affirmed that decision in an unpublished opinion.   The Supreme Court granted review and held the case pending resolution of *People v. Tirado* (2022) 12 Cal.5th 688.  The Supreme Court ultimately transferred the matter back to this court with directions to vacate the decision and reconsider the cause in light of *Tirado*.  After multiple rounds of briefing, this court concluded the matter should be remanded to the trial court for a full resentencing and exercise of discretion by the trial court under then current sentencing laws.  (*Stinson II*, *supra*, C093993.)

## B.  Stinson II on Remand

### 1.  Resentencing Briefs

On remand, defendant filed a resentencing brief arguing, as relevant here, the trial court should exercise its discretion and strike (or reduce) the firearm use enhancement. Defendant argued there were mitigating circumstances the court was required to consider in the "interest of justice" under section 1385.  Defendant noted that even without the 10-year firearm use enhancement, he "would still remain serving a significant, lengthy state prison commitment of an indeterminate term of 7 years to life regarding count 1, consecutive to first serving a determinate term."  This sentence, he argued, would still be commensurate with his crimes.

Defendant also contended that, pursuant to Senate Bill No. 81 (2021-2022 Reg. Sess.) (Senate Bill 81), the court may be *required* to strike the firearm use enhancement because:  (1) application of the enhancement would result in a discriminatory racial impact; (2) multiple enhancements were alleged; (3) application of the enhancement could result in a sentence over 20 years; (4) the current offense was connected to defendant's mental illness; and (5) the current offense was connected to childhood trauma.  Defendant attached

3

numerous exhibits to support his claim that the crimes he committed were the result of childhood trauma.

The People opposed defendant's motion. They argued dismissing the enhancements was not in the interests of justice and a reduction in defendant's sentence would endanger public safety. To support their argument, the People relied on defendant's history of criminal violence, his postconviction conduct, and the facts underlying his commitment offenses. The People noted that, since his conviction, defendant engaged in conduct resulting in 16 rules violations between February 2016 (when he was moved to the "sensitive needs yard") and March 2023.

In support of their opposition, the People argued the trial court was not *required* to dismiss either of the enhancements under section 1385 but had the discretion to do so if it was in the interests of justice. Defendant's history of violence, the circumstances of the commitment offenses, and defendant's behavior while incarcerated, however, all weighed against the court exercising its discretion to dismiss or reduce the enhancements.

### 2. *February 23, 2024, Resentencing Hearing*

At the February 23, 2024, resentencing hearing, the trial court said it reviewed the entire court file, the parties' resentencing briefs and supporting exhibits, and the statements written by defendant and his fiancée. As he did in his resentencing brief, defendant argued the court not only had discretion to dismiss the firearm use enhancement, but the court may be *required* to under section 1385, subdivision (c). Either way, defendant argued, the mitigating circumstances created a rebuttable presumption that the interests of justice would be served by dismissing the firearm use enhancement. The People disagreed and argued that defendant was a danger to society.

The trial court denied defendant's request to dismiss the firearm use enhancement. In support of its decision, the court understood section 12022.53, subdivision (h) gave the court discretion to strike or dismiss the enhancement "in the interests of justice." The court "weighed and considered striking the enhancement." In so doing, the court "looked at the character of the offense, the fact that it was a highly – it was a callous crime, extremely

4

antisocial, and . . . in the Court's view, it would not further the interest of justice to strike or dismiss the firearm enhancement."

The court further explained it found the nature of the commitment offense troubling and gave "a lot of weight" to that. The court also gave weight to the fact that defendant was only 22 years old when he committed the relevant commitment offense. But, the court said, although he was only 22 years old, defendant already had two felony convictions for crimes of violence against women and was on probation for those crimes when he committed that offense. The court also considered defendant's extensive juvenile record and found that too weighed against striking or dismissing the firearm use enhancement.

In addition, the trial court considered defendant's postconviction conduct. The court noted defendant incurred numerous rules violations, eight of them "serious." Defendant incurred serious violations as recently as 2021, for fighting, and 2022, for delaying a peace officer in the performance of his duties, and 2023, for having a cell phone. The court acknowledged having seen "much more egregious violations in prison, but the court needs to give some weight to that because it does reflect that he doesn't follow the rules."

The court found that since his conviction, defendant gained some understanding for how his upbringing affected him and his choices. The court disagreed with the People's position that defendant showed "no sense of growth": "You say that you're not the same person you were. I believe that. You're not the same person you were. So I appreciate the letter, and I do give it some weight." The court concluded, however, that "when I weigh the nature of the offense versus all the other information and factors that I just talked about," there are no "legitimate grounds" for striking the firearm use enhancement.[2] The court also denied defendant's alternate request to reduce the firearm use enhancement, finding a reduction was not warranted given the "dangerous, violent behavior involved in this case."

---

[2] The reporter's transcript reflects the court said it would not "strike the strike." Because there were no strike allegations at issue, and given the context, we assume the court simply misspoke and intended to say, "strike the enhancement."

Next, the court considered the impact of Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill 567) and, given defendant's age, the court determined the middle term was appropriate on count four, not the previously imposed upper term. Accordingly, the court reduced defendant's sentence on count four (the principal count) to the middle term of four years. The court reduced the sentence on counts two and three to the middle term as well and imposed the one-year arming enhancement on count two. The court stayed these terms pursuant to section 654.

The court also considered the impact of Assembly Bill No. 518 (2021-2022 Reg. Sess.) (Assembly Bill 518) and Senate Bill 81 on defendant's sentence. Considering Assembly Bill 518, the court found the facts of this case warranted the longer sentence. As such, the court chose not to impose the shorter term under section 654.

Considering Senate Bill 81, the trial court observed that "the bill provides the proof of the presence of one or more specified mitigating circumstances weigh greatly in favor of dismissing an enhancement unless the court finds the dismissal within danger of public safety." The court said, "I've already indicated why I'm imposing the firearm [use] enhancement." However, the court understood it should "afford great weight" to dismissing the arming enhancement because multiple enhancements would otherwise be imposed. The court concluded: "I'm going to elect not to dismiss the [arming enhancement], on Counts One and Two because the dismissal would not be in the interest of justice, and it would endanger public safety in light of [defendant]'s conduct – both the conduct that led to this imprisonment here and some problems he's had in custody."

The court thus sentenced defendant to a determinate term of 15 years 8 months, followed by a consecutive indeterminate term of seven years to life in state prison. When asked by counsel, the court advised defendant that the Department of Corrections and Rehabilitation (CDCR) would "take care of the [custody] credits." The court closed the hearing with the following: "[Defendant], you're doing better, I understand you are. I really appreciate the information you gave me, and I want you to do the best you can. All right. Thank you."

6

Defendant filed a timely notice of appeal.

DISCUSSON

A. *Firearm Enhancements*[3]

Defendant contends the trial court erred by refusing to dismiss "any and all enhancements." Citing section 1385, subdivision (c)(2)(B) and (E), he argues the presence of enumerated mitigating circumstances – multiple enhancements and childhood trauma – created a presumption in favor of dismissing the enhancements, which could only be overcome by a finding that dismissal would endanger public safety. After defendant filed his opening brief, however, the California Supreme Court rejected this interpretation of section 1385.

In *People v. Walker* (2024) 16 Cal.5th 1024, 1034, (*Walker*), the Supreme Court held that "the plain language of section 1385, subdivision (c)(2) does not erect a rebuttable presumption in favor of dismissal that can only be overcome by a finding that dismissal endangers public safety." (*Walker*, at p. 1033.) Notwithstanding the presence of mitigating circumstances, a trial court has discretion to decide whether to dismiss an enhancement in the interests of justice under section 1385, subdivision (c)(2). (*Walker*, at p. 1036.)

We review a trial court's decision whether to strike or reduce an enhancement under section 1385 for abuse of discretion. (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298.) " ' "[T]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' " (*People v. Carmony* (2004) 33 Cal.4th 367, 376-377.) But " 'an abuse of discretion arises if the trial court based its decision on impermissible factors . . . or on an

---

[3]    The People contend defendant forfeited any claim on appeal that the trial court abused its discretion by refusing to dismiss the section 12022 enhancement. We do not resolve the question of forfeiture but instead elect to address the issue on the merits.

7

incorrect legal standard.' " (*People v. Gonzalez* (2024) 103 Cal.App.5th 215, 225 (*Gonzalez*).)

Here, the trial court concluded it was not in the interests of justice to dismiss the enhancements and reduce defendant's sentence further. The court also found dismissing the enhancements would endanger public safety. Section 1385, subdivision (c)(2), "does not require the trial court to consider any particular factors in determining whether 'there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others.' " (*People v. Mendoza*, *supra*, 88 Cal.App.5th at p. 299.) A finding defendant is *presently* a danger to society, however, does not end the required inquiry. Before it can decline to give great weight to the mitigating circumstances relevant here, the trial court was required to examine whether the defendant would present a danger to society on the future date he might be released if the trial court struck enhancements from his sentence. (*Gonzalez*, *supra*, 103 Cal.App.5th at pp. 230-231.) The failure to do so is an abuse of discretion. (*Ibid*.)

In *Gonzalez*, the defendant was sentenced to 75 years to life for murder, which included an enhancement of 25 years to life in state prison for a firearm enhancement. (*Gonzalez*, *supra*, 103 Cal.App.5th at pp. 219-220.) The trial court declined to dismiss the enhancement finding defendant was a present danger to society, but without examining his dangerousness in the future when he might be ultimately released from prison. (*Id*. at p. 224.) The appellate court concluded the trial court abused its discretion because it merely examined whether the defendant was currently a danger to the public. The statute, however, required the trial court to consider the date on which the defendant could be released if the enhancement had been dismissed and the fact that the release would be subject to a review by the Board of Parole Hearings and the Governor. (*Id*. at pp. 230-231.)

As explained in *Gonzalez*, "Although the current dangerousness of the defendant is an appropriate factor to consider, as it will have some bearing on whether dismissing the enhancement would endanger the public, a crucial part of the inquiry is how the dismissal of the enhancement will impact the length of the defendant's sentence. A currently dangerous

defendant who will be released from prison within a short timeframe might be found by the trial court to pose a greater danger to the public than a defendant who is currently dangerous but who has no prospect of release from prison until he is elderly." (*Gonzalez*, *supra*, 103 Cal.App.5th at p. 228.)

Here, the trial court did not limit itself to finding defendant was a *present* danger to society. Rather, the court conducted a detailed and " 'holistic balancing' " of all the relevant factors. (*Walker*, *supra*, 16 Cal.5th at p. 1036.) The court considered defendant's juvenile history, the violent and "extremely antisocial" nature of the commitment offense, and defendant's postconviction conduct. The court also took into account defendant's personal growth and applauded him for the work he was doing, finding he was not the same person who committed these crimes. Nevertheless, the court concluded, with the very recent serious rules violations, defendant continued to be a violent person who did not like to follow the rules. The court also considered the length of defendant's sentence along with defendant's argument that even without the firearm enhancements, the prison sentence would still be a long one.

On balance, the court concluded, defendant remained a violent person who did not follow the rules. Defendant may do better in the future, but that had not been established. The court, therefore, was not persuaded that a reduction in defendant's sentence was in the interests of justice. Reasonable minds could disagree with the court's sentencing choice, but the court did not abuse its discretion.

### B. Custody Credits

Pursuant to section 2900.1, "when a sentence is modified while in progress, the 'time' already served 'shall be credited upon any subsequent sentence [the defendant] may receive upon a new commitment for the same criminal act or acts.' " (*People v. Buckhalter* (2001) 26 Cal.4th 20, 37.) This requires the trial court to update the actual custody credits on the amended abstract of judgment to reflect "all *actual* days" spent in custody "whether in jail or prison" up until the resentencing. (*Ibid*.) "A sentence that fails to award legally mandated custody credit is unauthorized and may be corrected whenever discovered."

9

(*People v. Taylor* (2004) 119 Cal.App.4th 628, 647.) We therefore accept the parties' concession that the trial court must determine defendant's custody credits up to his resentencing date.

DISPOSITION

The matter is remanded with directions for the trial court to calculate and award custody credits through defendant's resentencing on February 23, 2024. The trial court shall prepare an amended abstract of judgment reflecting the updated custody credit award and forward a certified copy of this abstract to the CDCR. The judgment is otherwise affirmed.

/s/
WISEMAN, J.*

We concur:

/s/
EARL, P. J.

/s/
MESIWALA, J.

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.